IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| K.D., et al., <br><br>         *Plaintiffs*, <br><br>   v. <br><br> JEWISH FAMILY AND CHILDREN'S SERVICES OF GREATER PHILADELPHIA, et al., <br><br>         *Defendants*. | CIVIL ACTION <br> NO. 15-05740 |

**PAPPERT, J.**                                                                                        **APRIL 7, 2016**

**<u>MEMORANDUM</u>**

      K.D. and L.C. (collectively "Plaintiffs"), sued Jewish Family and Children's Services ("JFCS"), the City of Philadelphia ("City"), Theresa Bryant ("Bryant") and Dende Korpoi ("Korpoi") (collectively "Defendants") for their respective roles in placing Plaintiffs in a foster home where they were sexually molested over a period of several years.[1] The molestation continued after K.D. was formally adopted by her foster parents. After Plaintiffs amended their complaint, Defendants each moved to dismiss Plaintiffs' claims as time-barred. In 2002 the statute of limitations governing the filing of civil actions arising from childhood sexual abuse was amended and lengthened from two to twelve years after the victim of the sexual abuse turns eighteen. Defendants argue that Plaintiffs are subject to the two-year limitations period because the molestation occurred prior to the effective date of the amendment. Plaintiffs contend that since they did not turn eighteen until after the longer limitations period took effect, the amended statute governs their claims and their lawsuit should proceed. In the event the amended

---

[1]     On October 26, 2015, the Court granted plaintiffs' motion to proceed anonymously due to the nature of their allegations and their status as minors at the time of the relevant conduct at issue in this case. (ECF No. 4.)

1

complaint is not time-barred, JFCS asks the Court to dismiss those of K.D.'s claims which are based on conduct taking place after her foster parents formally adopted her. JFCS argues that there is no duty to ensure the safety of an adoptee.

For the reasons that follow, the Amendment extending the statute of limitations applies to the Plaintiffs claims and those claims are not time-barred. K.D., however, fails to allege facts demonstrating that any of the defendants established the "special relationship" required to impose a post-adoption duty to ensure her safety and welfare. Her claims for conduct which took place after her adoption are dismissed.

**I.**

In August of 1996, JFCS placed K.D. into the foster care of Mr. and Mrs. Castelow ("the Castelows"), whom JFCS had previously approved as foster parents. (Am. Compl. ¶ 2, ECF No. 12.) Within five months, Mr. Castelow began to sexually molest K.D. on a weekly basis. (*Id.*) In July of 1998, JFCS also placed K.D.'s biological sister L.C. into the foster care of the Castelows. Within weeks of L.C.'s placement, Mr. Castelow began sexually molesting her as well. (*Id.* ¶ 3.)

Between August 1996 and the beginning of 2002, JFCS and the City assigned at least five different foster care social workers to visit and monitor K.D. and L.C. at the Castelows' home. (*Id.* ¶ 4.) During the required visits, the assigned social workers met with K.D. and L.C.. (*Id.* ¶¶ 4–5.) Plaintiffs allege that these visits were insufficient to allow them to describe the sexual molestation because they did not meet with the social workers in an "individual and private" setting: "on those rare occasions when the social workers met with Plaintiffs 'alone', [sic] such meetings were held in a centralized location within the Castelow's [sic] home, such as the kitchen, where their foster parents were frequently located at close proximity and within hearing

range." (*Id.* ¶ 6.)  Plaintiffs also claim that at some point, one of the Castelows' neighbors sent the City and JFCS an anonymous letter accusing Mrs. Castelow of physically abusing K.D. and L.C., and accusing Mr. Castelow of using illegal drugs.  (*Id.* ¶ 61.)

At some point, the Castelows told JFCS that they wanted to legally adopt K.D.  (*Id.* ¶ 66.)  K.D. alleges that JFCS recommended her adoption "[d]espite the foreseeable risk and failures to do a proper investigation and in deliberate indifference" to her rights.  (*Id.* ¶ 67.)  Specifically, K.D. contends that Korpoi, a JFCS social worker and adoption specialist, recommended the adoption based solely on letters from the Castelows' close family and friends and without a full investigation.  (*Id.* ¶ 68.)  On September 28, 2000, the Adoption Branch of the Philadelphia County Court of Common Pleas approved K.D.'s adoption by the Castelows and entered a final decree based on the JFCS and City's consent.  (*Id.* ¶¶ 7, 71.)

In approximately May 2002 while K.D. was in eighth grade, she wrote a story about a young girl who was abused by her adoptive father.  (*Id.* ¶¶ 72–73.)  K.D. revealed in the conclusion that she was the young girl in the story.  (*Id.* ¶ 74.)  Her eighth grade teacher reported this to the school's guidance counselor.  (*Id.* ¶ 75.)  In a subsequent meeting with the guidance counselor, K.D. stated that Mr. Castelow sexually molested her and her sister, L.C. (*Id.* ¶ 77.)  After the guidance counselor notified the City, social workers removed K.D. and L.C. from the Castelow residence and placed them into the care and custody of Youth Emergency Services.  (*Id.* ¶ 13.)

In August 2002, the Pennsylvania General Assembly amended 42 Pa. Cons. Stat. § 5533 to extend the statute of limitations for plaintiffs bringing lawsuits arising from childhood sexual assault from two to twelve years after the victim turns eighteen.  As amended, Section 5533(b)(2)(i) provides that:

3

> If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the childhood sexual abuse.

On August 30, 2002, Mr. Castelow was charged with and subsequently found guilty of various crimes related to the molestation of K.D. and L.C. (*Id.* ¶¶ 15–16.) K.D. turned eighteen on May 19, 2006, and L.C. turned eighteen on September 29, 2010. (*Id.* ¶¶ 21–22.)

On October 22, 2015, K.D. and L.C filed their complaint against JFCS, the City, and two JFCS employees, Bryant and Korpoi, in their capacity as individuals "who [were] assigned to the care of [K.D.] and [L.C.] during the relevant periods." (Am. Compl. ¶¶ 31–32.) Plaintiffs subsequently filed an amended complaint on December 1, 2015. (ECF Nos. 1, 12.) The amended complaint alleges that Defendants "failed to appropriately monitor, investigate and approve their foster parents initially as a foster home and ultimately as an adoptive home, resulting in significant physical, psychological, social, developmental, and emotional injury to Plaintiffs." (*Id.* ¶ 19.) Specifically, Plaintiffs allege that Defendants violated their Fourteenth Amendment due process rights to be free from state-created dangers and that they violated a duty imposed by the "special relationship" established with Plaintiffs. (*Id.* ¶¶ 81–102, 138–61.) Plaintiffs also bring claims against Defendants for negligence and intentional infliction of emotional distress, and contend that the City maintained "policies, practices and/or customs exhibiting deliberate indifference" to the constitutional rights of persons in their custody. (*Id.* ¶¶ 103–37, 162–79.)

The City and JFCS filed motions to dismiss in which they argue that Plaintiffs' claims are barred by the two-year statute of limitations provided by Section 5533 prior to 2002.[2]  (ECF Nos. 15, 16.)  In the event that the Court denies Defendants' Motions to Dismiss, JFCS seeks to strike any mention of post-adoption liability in the amended complaint since it did not owe any duty to K.D. after her adoption.[3]  (JFCS Mot. to Dismiss at 9–12.)  In response, Plaintiffs contend that Section 5533's twelve-year statute of limitations, effective at the time they turned eighteen, applies and that Defendants are legally responsible for the abuse K.D. suffered after her adoption.  They argue that their lawsuit is therefore not barred and all claims should proceed.  (Pl. Resp. to Mot. to Dismiss, ECF No. 17.)  The Court heard oral argument on the motions on March 22, 2016.  (ECF No. 31.)

**II.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court must construe the complaint in the "light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)).  The court, however, need not give credence to mere "legal conclusions" couched as facts. *Iqbal*, 556 U.S. at 678.

---

[2]   Korpoi and Bryant also each filed motions to dismiss.  (ECF No. 20, 24.)  Korpoi incorporates by reference the memorandum submitted by the City; Bryant incorporates by reference the memorandum submitted by JFCS.

[3]   JFCS specifically asks the Court to strike the phrase "ensure post-adoption safety and welfare" from paragraphs 120 and 124 in Count III of the amended complaint.  (JFCS Mot. to Dismiss at 9.)  JFCS also argues in its memorandum, however, that the Defendants cannot have post-adoption liability since there was no "special relationship" established with K.D., which Plaintiffs allege separately in Count IV.  (*Id.* at 11–12.)  For the reasons discussed *infra*, the Court interprets JFCS's motion as a motion to dismiss all mention of post-adoption liability, not just those allegations in paragraphs 120 and 124.

A statute of limitations defense may be raised under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Hanna v. U.S. Veterans Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975). "Of course, when the expiration of the limitations period is apparent from what a plaintiff does plead or present, dismissal or judgment as a matter of law is appropriate." *Pitts v. N. Telecom, Inc.*, 24 F. Supp. 2d 437, 443 (E.D. Pa. 1998) *aff'd sub nom. Pitts v. Int'l Bus. Machines, Inc.*, 211 F.3d 1262 (3d Cir. 2000) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

### III.

The Third Circuit Court of Appeals has recognized that the amendment to Section 5533 "defined an entirely separate period of limitations for claims of childhood sexual abuse." *Stephens v. Clash*, 796 F.3d 281, 290 (3d Cir. 2015). The twelve-year period "after attaining [eighteen] years of age . . . . supplants the existing statute of limitations for battery claims." *Id.* The issue before the Court is whether that amendment, which was enacted after Plaintiffs' claims accrued but before K.D. and L.C. turned eighteen, applies to those claims. If so, they have twelve years after reaching the age of majority to file a lawsuit. If the amendment does not apply, their claims are subject to the pre-2002 two-year statute of limitations which bars their lawsuit.

Defendants contend that the pre-2002 statute governs because Plaintiffs' claims "accrued prior to enactment of the amendment." (City Mot. to Dismiss at 5, ECF No. 15.) "Since Plaintiffs' claims arose before § 5533(b)(2)(i) was effective in August 2002, the statute of

limitations would be two years after attaining age eighteen." (JFCS Mot. to Dismiss at 9, ECF No. 16.) Under that interpretation of the statute, K.D. and L.C. would have had to file suit prior to their twentieth birthdays in May 2008 and September 2012, respectively. Because they did not file their complaint until October 2015, Defendants argue that their claims are time-barred.

In support of that argument, Defendants rely on *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270 (Pa. Super. Ct. 2005), and *Vonberg v. City of Philadelphia*, No. 07-3323, 2008 WL 268050 (E.D. Pa. Jan. 29, 2008). In *Baselice*, the Superior Court of Pennsylvania stated in a footnote that Section 5533 "is not applicable [to the court's decision] . . . as the statute is not retroactive (the current cause of actions accrued prior to the enactment of that amendment to the statute)." 879 A.2d at 274 n.1. Defendants interpret that dicta to mean that the Amendment does not apply to claims that accrued prior to 2002, and that any claim which accrued prior to that time is subject to a two-year limitations period. (JFCS Mot. to Dismiss at 8.)

K.D. and L.C. both turned eighteen *after* the amendment, while the plaintiff in *Baselice* turned eighteen in approximately 1996 and his two-year statute of limitations ran well before 2002.[4] *See id.* at 274. The Superior Court therefore referenced "retroactivity" in the context of a dead claim—*i.e.*, a claim that expired prior to the amendment. It did not discuss the application of the twelve-year statute of limitations in the context of a claim, such as Plaintiffs' in this case, where the original two-year statute limitations period had yet to run at the time the amendment took effect. Recognizing that Section 5533 had no impact on the merits of that case, the *Baselice* court instead analyzed the plaintiff's claims in the context of the discovery rule and

---

[4] Though the Pennsylvania Superior Court did not state plaintiff's birthday, it noted that as of the time of the decision in 2005 he was twenty-six. Though the Court cannot discern in precisely which year he turned eighteen, it is apparent that his two-year statute of limitations period ran well before the 2002 Amendment.

fraudulent concealment. Accordingly, the dicta in *Baselice* is of minimal value in analyzing the application of the Amendment to K.D. and L.C.'s claims.

In *Vonberg*, an unpublished opinion, our Court cited the footnote in *Baselice* and stated that "[t]he statute is not retroactive, and where the cause of action accrued prior to the enactment of that amendment to the statute, suit must be brought by the age of 20, not the age of 30." 2008 WL 268050 at *1 (citing *Baselice*, 879 A.2d at 274 n.1) (internal quotation marks omitted). Even though the plaintiff in *Vonberg* turned eighteen after the Amendment, the Court relied on the *Baselice* footnote without further analysis.

*Vonberg* and *Baselice* do not govern this case. In discussing "retroactivity," the Court must draw a distinction between asking whether the amendment may "revive[ ] a moribund cause of action" or merely extend the statute of limitations for a cause of action that has not yet lapsed. *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 488 (3d Cir. 2005) ("Though related, the two questions are analytically distinct . . . ."); *see also Sefen ex rel. U.S. v. Animas Corp.*, No. 10-2971, 2014 WL 2710957, at *5 n.5 (E.D. Pa. June 13, 2014), *aff'd sub nom. U.S. ex rel. Sefen v. Animas Corp.*, 607 F. App'x 165 (3d Cir. 2015) ("[W]e may sometimes apply a newly-enacted statute of limitations to a pending case, but not if the effect would be to revive a claim that expired before the statute's effective date.") (internal citation and quotation marks omitted).

The Court agrees that the amendment to Section 5533 does not retroactively revive a lapsed claim. In the absence of clear language in the statute, "extending the statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action." *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 950 (1997) (internal citation omitted); *see also Larthey by Larthey v. Bland*, 532 A.2d 456, 462 (Pa. Super. Ct. 1987)

("We find no support for appellants' argument that section 5533 should be applied retroactively to revive a cause of action already barred by the statute of limitations."); 1 Pa. Cons. Stat. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.").

The Court does not agree, however, that this discussion of "retroactivity" can so easily be applied to this case, where a statute of limitations period is extended after the claim accrued but before the original limitations period has lapsed. In *Lieberman v. Cambridge Partners, L.L.C.*, the Third Circuit stated:

> Providing that a statute of limitations should be "applied retroactively" is a broad brush approach to what is actually a more specific inquiry. Retroactive application can reach two categories of cases: first, a group on which the statute has not run at the time the statute is amended; and second, cases on which the existing statute has run at the time of amendment. The second group is affected not only by questions of the retroactive application of the statute, but also by the need to consider the question of revival of barred claims.

432 F.3d 482, 488 (3d Cir. 2005) (citing *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 615 (8th Cir. 1995)); *see also Martin v. Hadix*, 527 U.S. 343, 362, (1999) (Scalia, J., concurring) ("But that leaves open the key question: retroactive in reference to what?"). The dicta in the *Baselice* footnote—and *Vonberg*'s reliance on that footnote—does not resolve the issue before the Court. It is instead necessary to undertake a more specific analysis to determine whether the application of the Amendment in this situation would have an impermissible retroactive effect.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the Supreme Court of the United States articulated the framework for addressing whether a statute has an impermissible "retroactive effect:" in the absence of clear congressional intent on the face of the statute, "the court must determine . . . whether [applying the statute] would impair rights a party possessed

when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." If applying the statute would do any of these, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

The Third Circuit has already addressed that question in the context of a statute that alters the limitations period for a claim that has not yet lapsed: "the fact that a new statute of limitations was enacted after the primary conduct giving rise to the suit . . . does not make application of the new statute of limitations unfair from a 'retroactivity' standpoint." *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414 (3d Cir. 2010). The Supreme Court of Pennsylvania has similarly held that "[t]here is nothing 'retroactive' about the application of an extension of a statute of limitations, so long as the original statutory period has not yet expired." *Commonwealth v. Johnson*, 553 A.2d 897, 900 (Pa. 1989) (holding that new statute of limitations may extend a limitations period for offenses not already barred at the time of its enactment) (internal citations and quotation marks omitted). Here, applying the amended statute merely lengthens Plaintiffs' limitations period—which had not even begun to run at the time of the amendment's enactment. It does not revive a claim that has already lapsed, increase a party's liability for past conduct, impair rights, or impose new duties.

In *Apicella v. Valley Forge Military Academy and Junior College*, 630 F. Supp. 20, 23 (E.D. Pa. 1985), our Court addressed the same issue in the context of the General Assembly's 1984 amendment to Section 5533. Prior to 1984, individuals had two years from the date their cause of action accrued to bring personal injury claims. *Apicella*, 630 F. Supp. at 22. In 1984,

10

the General Assembly amended Section 5533 to toll the time the statute of limitations begins to run until the plaintiff turns eighteen, after which individuals had two years to file a claim.[5] *Id.*

At the time of the 1984 amendment's enactment, plaintiff Jerry Apicella's two-year window from the date his cause of action accrued had not yet lapsed. *Id.* at 22–23. He filed his complaint after the 1984 amendment and within two years after his eighteenth birthday, but more than two years after the claim accrued; in other words, his claim was timely under the amended statute but untimely under the pre-1984 statute of limitations. Defendants argued that Apicella's cause of action accrued prior to the date of the 1984 amendment and that his claims were barred by the statute of limitations in effect at that time. *Id.* at 23. Similar to Defendants here, the defendants in *Apicella* contended that "applying the 1984 amendment to plaintiffs' claim is a retroactive application of law in violation of [Pennsylvania law]." *Id.* The district court disagreed, stating that "Apicella benefits from a procedural change, but reference to events in the past is not a retroactive application of law *per se*." *Id.* It continued: "[A] statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its [e]nactment." *Id.* (internal citations and quotation marks omitted). Critical to its decision was the fact that Apicella's claims had not yet lapsed at the time of the 1984 amendment.[6]

---

[5] The General Assembly did not amend Section 5533 between 1984 and 2002.

[6] That decision is consistent with the Pennsylvania Commonwealth Court's decision in *In re Condemnation v. Carmichels-Cumberland Joint Sewer Authority*, 490 A.2d 30, 32 (Pa. Commw. Ct. 1985), where the court addressed an analogous question in the context of an amendment to a different statute, 44 Pa. Cons. Stat. § 5530. The amendment at issue essentially extended the statute of limitations for plaintiff to bring his claim from six to twenty-one years. 490 A.2d at 543–44. The court distinguished the facts of that case from the facts of a case where a plaintiff's claim was fully barred prior to the effective date of the new statute: "that case did not present the current problem of a claim which was not time-barred on the effective date of a new statute of limitations and was filed within that new limitations period." *Id.* at 546. The court held that a "[r]eview of the relevant cases requires the conclusion that the statute of limitations in effect at the time a case is filed applies to that proceeding . . . .[if the claim was] not time barred when the new statute took effect." *Id.*

Although their claims accrued prior to the amendment, K.D. and L.C. did not turn eighteen until after 2002. Thus, at the time of the amendment the previous statute of limitations had not only not expired, it had not yet commenced running. Applying the twelve-year statute of limitations is not a retroactive application of the law; the extended limitations period applies to Plaintiffs' claims and those claims are not time-barred.[7]

## IV.

JFCS also moves, in the event that the Court denies its motion to dismiss, to strike any reference to post-adoption negligence from the amended complaint. (JFCS Mot. to Dismiss at 9–12.) Federal Rule of Civil Procedure 12(f) provides that "[u]pon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *River Road Dev. Corp. v. Carlson Corp. Ne.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). "A motion to strike is not a proper way to dismiss part of a complaint for legal insufficiency." *Jordan v. Cicchi*, No. 10-4398, 2014 WL 2013385, at *1 (D.N.J. May 16, 2014) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2004)). "Nevertheless, a court can consider an improper Rule 12(f) motion as a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Magnotta v. Leonard*, 102 F. Supp. 593, 593 (M.D. Pa. 1952)).

In its memorandum, JFCS blends the language of Rules 12(f) and 12(b)(6). For example, it asks the Court to "strike" mention of post-adoption liability because "Plaintiffs fail to state a

---

[7] Under the twelve-year statute of limitations, K.D. and L.C. had to file their claims before May 19, 2018 and September 29, 2022, respectively.

claim upon which this Court may grant relief." (JFCS Mot. to Dismiss at 12.) The Court therefore treats the relief JFCS seeks as a motion to dismiss pursuant to Rule 12(b)(6).

K.D. alleges that Defendants breached a duty "to ensure [her] post-adoption safety and welfare." (Am. Compl. ¶ 120.) She also alleges that Defendants "had a special relationship with Plaintiffs which imposed upon [them] an affirmative duty to care for and protect Plaintiffs from harm under the Fourteenth Amendment to the United States Constitution." (*Id.* ¶ 140.) Defendants argue that the "Court should . . . refuse to recognize a post-adoption duty to ensure the safety of an adoptee[ ]" and dismiss these allegations. (JFCS Mot. to Dismiss at 12.)

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195–96 (1989), the United States Supreme Court held that the Fourteenth Amendment provides no affirmative right to governmental aid or protection against violence from private individuals. There are two exceptions to *DeShaney*'s holding: the "special relationship" theory and the "state-created danger" rule. *DeShaney*, 489 U.S. at 200–01; *see also Hayes*, 497 F. Supp. 2d at 691. In explaining the "special relationship" exception, the Supreme Court stated that the "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act." *DeShaney*, 489 U.S. at 200. The Third Circuit "has read *DeShaney* primarily as setting out a test of physical custody for purposes of determining whether there is a special relationship between the state and the plaintiff." *Ye v. United States*, 484 F.3d 634, 637 n.1 (3d Cir. 2007) (internal citation and quotation marks omitted).

Plaintiffs rely on *Hayes v. Erie County Office of Children and Youth* for the proposition that "[t]here may be cases where a child welfare agency has on-going involvement with a child in an adoption setting such that it acquires a constitutional duty to protect the child from harm

occurring during the pendency of, or soon after, adoption proceedings." 497 F. Supp. 2d 684, 695 (W.D. Pa. 2007) (internal citations omitted).

In *Hayes*, the Erie County Office of Children and Youth ("OCY") placed Brittany Legler ("Legler") in the care of her adoptive mother. *Id.* at 688. Legler eventually died "as the result of [her adoptive mother's] cumulative physical abuse." *Id.* The administrators of Legler's estate sued OCY and various employees for violation of Legler's federal substantive due process rights. *Id.* at 687. The district court granted Defendants' motion to dismiss Plaintiffs' claim that they violated a duty imposed by a "special relationship" because Plaintiffs failed to allege facts sufficient to support a finding that a "special relationship" existed. *Id.* at 695. Consistent with the Supreme Court and Third Circuit's focus on "physical custody" over the individual in assessing the existence of a "special relationship," the district court stated that "absent a custodial or 'sufficiently analogous' relationship between [Legler] and OCY . . . [plaintiffs cannot] make out a 'special relationship' claim." *Id.* at 695. The district court's decision recognized a distinction between a foster child, over whom OCY has custody, and an adoptee, over whom it did not. *Id.* at 694–95. "If the Plaintiffs' argument is taken to its logical conclusion, then child welfare agencies, having once played a role in the placement of a child into an adoptive home, will thereby always assume a 'special relationship' with the child . . . for an indefinite period of time." *Id.* at 695.

The proposition on which K.D. relies—that there *may* be instances where a "special relationship" exists post-adoption—is undermined by the *Hayes*' court's ultimate holding, and the sentence immediately preceding the one K.D. cites: "[f]or present purposes, we need not and do not opine as to whether a child welfare agency can *ever* have a 'special relationship' with an adopted child such that it acquires a duty to protect the child from post-adoption abuse." *Id.*

Here, Plaintiffs' amended complaint fails to allege facts sufficient to demonstrate that a "special relationship" may have existed. Specifically, it fails to allege particular facts or circumstances giving rise to an inference that Defendants maintained a "custodial or sufficiently analogous relationship" with K.D. during her adoptive care. *See Hayes*, 497 F. Supp. 2d at 695 (internal quotation marks omitted). To the contrary, it summarily states that Defendants "had a special relationship" and that they owed a duty to "ensure post-adoption safety and welfare." (Am. Compl. ¶ 120.) The Court accordingly dismisses those portions of the amended complaint which allege breaches of duties owed post-adoption.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J